United States District Court
Southern District of Texas
**ENTERED**
June 12, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STUART JOB, | § | CIVIL ACTION NO |
| Plaintiff, | § | 4:22-cv-03017 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| UR M. JADDOU, *et al*, | § | |
| Defendants. | § | |

OPINION AND ORDER
GRANTING SUMMARY JUDGMENT

The motion for summary judgment by Defendants Ur M. Jaddou, Alejandro Mayorkas, The US Department of Homeland Security, US Citizenship and Immigration Services, Susan Dibbins, John Allen, and Officer XM2084 is granted. Dkt 28.

1. Background

Plaintiff Stuart Job is a citizen of Australia. He is an employee of Shell PLC and resides in Katy, Texas. See Dkts 1 at ¶7 (original complaint) & 25 at 18 (administrative record). He filed an I-140 Immigrant Visa Petition with the Texas Service Center of USCIS in May 2021. He stated eligibility on the grounds of being an alien with "extraordinary ability in the field of executive positions and roles in energy operations." Dkt 1 at ¶20.

USCIS issued a "request for evidence" in June 2021, to which Job responded the next month. Id at ¶22. USCIS then denied the petition in August 2021 on the grounds that Job provided evidence demonstrating only two of the criteria for "extraordinary ability" classification, when he needed to show at least three. Id at ¶24.

Job appealed to the USCIS Administrative Appeals Office in October 2021, arguing that (i) he met the evidentiary burden necessary to show "extraordinary ability," (ii) USCIS used the incorrect standard of proof, and (iii) USCIS failed to consider all of the evidence. See Dkt 25 at 17–37 (brief in support of appeal). The AAO conducted a *de novo* review and in June 2022 affirmed the denial of the petition by the Texas Service Center. Id at 4–8. It specifically found that, while Job met three criteria for the visa, id at 5, the totality of the evidence didn't satisfy the necessary standard requiring "national or international acclaim," Id at 6–7.

Job initiated this action in September 2022 against Defendants, seeking a declaratory judgment and injunctive relief under the Administrative Procedures Act. Dkt 1. He filed a motion for summary judgment in September 2023. Dkt 26. Defendants responded and asserted their own motion for summary judgment. Dkt 28.

2. Legal standard

The APA governs the permissible scope of actions taken by federal agencies. See 5 USC §701(b)(1). The statute entitles individuals to seek judicial review of any "agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." Id at §704. Among other directions, federal courts are required under the APA to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id at §706(2)(A); see *Yogi Metals Group, Inc v Garland*, 38 F4th 455, 458 (5th Cir 2022).

With respect to agency decision-making under the APA, the agency's role is "to resolve factual issues to arrive at a decision" supported by the administrative record. *Stuttering Foundation of America v Springer,* 498 F Supp 2d 203, 207 (DDC 2007) (quotation omitted). Review in the district court is then limited to the administrative record. See *Northwest Motorcycle Association v United States Department of Agriculture,* 18 F3d 1468, 1472 (9th Cir

1994). The Fifth Circuit holds, "The applicant for a visa bears the burden of establishing eligibility." *National Hand Tool Corp v Pasquarell,* 889 F2d 1472, 1475 (5th Cir 1989); see also *Boi Na Braza Atlanta LLC v Upchurch,* 194 F App'x 248, 249 (5th Cir 2006, *per curiam*), citing *National Hand Tool*, 889 F2d at 1475.

"APA cases are often resolved at summary judgment because whether an agency's decision is arbitrary and capricious is a legal question that the court can usually resolve on the agency record." *Amin v Mayorkas*, 24 F4th 383, 390–91 (5th Cir 2022), citing *University Medical Center of Southern Nevada v Shalala*, 173 F3d 438, 440 n 3 (DC Cir 1999). This means that, upon review by the district court of an agency's final decision under the APA, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Stuttering Foundation of America,* 498 F Supp 2d at 207, citing *Richards v Immigration and Naturalization Service,* 554 F2d 1173, 2d1177 & n 28 (DC Cir 1977).

An action is *arbitrary and capricious*, as used in the statute, "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Sierra Club v United States Environmental Protection Agency,* 939 F3d 649, 663–64 (5th Cir 2019), quoting *Texas Oil and Gas Association v United States Environmental Protection Agency,* 161 F3d 923, 933 (5th Cir 1998). The Fifth Circuit notes that this arbitrary-and-capricious standard is "narrow," and a reviewing court must be mindful "not to substitute its judgment for that of the agency." *10 Ring Precision Inc v Jones,* 722 F3d 711, 723 (5th Cir 2013) (cleaned up), quoting *Motor Vehicle Manufacturers Association of the United States Inc v State Farm Mutual Auto Insurance Co,* 463 US 29, 30 (1983). The

3

agency must engage in "'reasoned decision-making' in denying an application." *National Hand Tool*, 889 F2d at 1475, quoting *United States v Garner,* 767 F2d 104, 116 (5th Cir 1985). But the ultimate inquiry remains whether the agency can "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Sierra Club,* 939 F3d at 664, quoting *Motor Vehicle Manufacturers,* 463 US at 43, in turn quoting *Burlington Truck Lines Inc v United States,* 371 US 156, 168 (1962).

Because of the district court's limited role, "the standard set forth in Rule 56(c) does not apply" to its summary judgment review. *Stuttering Foundation of America,* 498 F Supp 2d at 207. "Our task is merely to ask whether the agency considered the relevant facts and articulated a satisfactory explanation for its decision; we cannot substitute our judgment for the agency's." *Amin*, 24 F4th at 393, citing *Department of Commerce v New York*, 139 S Ct 2551, 2569 (2019).

  3. Analysis

An alien may file an I–140 visa petition for classification "as an alien of extraordinary ability in the sciences, arts, education, business, or athletics." 8 CFR §204.5(h). The regulation defines *extraordinary ability* as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 CFR §204.5(h)(2).

To show such ability, a petitioner must provide evidence of "sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise," which includes meeting at least three criteria from a list of ten. 8 CFR §204.5(h)(3). It is thus a two-step process—first to establish the three criteria, and then to determine on the merits that the evidence as a whole supports a finding of the required level of expertise and acclaim. *Amin*, 24 F4th at 388, citing *Kazarian v USCIS*, 596 F3d 1115, 1121 (9th Cir 2010).

4

USCIS concedes that Job did indeed meet three of the ten listed criteria listed. Dkt 25 at 5–6 (finding criteria iv, viii, and ix satisfied). The remaining question, then, is whether it was arbitrary and capricious for the AAO to affirm denial of Job's application on the grounds that the evidence didn't show that he was an alien of extraordinary ability.

USCIS based its *de novo* denial of Job's application on the administrative record, finding that the totality of the evidence didn't demonstrate that (i) Job had sustained national or international acclaim, or (ii) he was one of a small percentage at the very top of his field. Dkt 25 at 6. It stated that Job established his "role and reputation within Shell" itself but found that his success at one company didn't necessarily equate to national or international acclaim. Dkt 25 at 6. Furthermore, USCIS saw tension between separate claims by Job that (on the one hand) his scholarship had a lasting impact on the oil and gas industry, while (on the other hand) said scholarship couldn't be circulated outside Shell due to confidentiality concerns. Ibid. It also determined that Job's reputation of expertise within Shell "does not translate to a wider recognition of [Job] individually, which the statute and regulations require." Ibid. Ultimately, USCIS concluded that the record didn't demonstrate that Job's work was indicative of "sustained national or international acclaim." Id at 7.

Job contests this conclusion, arguing that (i) USCIS didn't consider all critical evidence, (ii) USCIS imposed an *ultra vires* criterion, (iii) Job will substantially benefit the United States, and (iv) USCIS applied an erroneous adjudication process.

*As to whether USCIS didn't consider all critical evidence,* the *de novo* denial of Job's application itself included references to the evidence that he argues was disregarded. For example, the denial referred to his work on various review panels, his contribution to industry plans regarding crane operations, his impactful scholarship, and various letters from experts showing how he impacted the

5

field. Dkt 25 at 6–7. Job points to a letter that he thinks shows the importance of his research and addresses the weakness highlighted by USCIS—that his work never circulated beyond Shell. Dkt 26 at 13–14. He also argues that USCIS failed to consider all of the letters that he submitted because they only cited one. Ibid. But the law requires only that USCIS *consider* such evidence—not that it give them "the weight [Plaintiff] would prefer." *Visinscaia v Beers*, 4 F Supp 3d 126, 135 (DDC 2013) (finding agency decision not arbitrary where it had considered proffered letters).

Beyond this, USCIS itself noted, "Letters intended to show how the Petitioner has impacted the field include qualifiers that appear to limit the scope of his contributions." Dkt 25 at 7. This means that it did consider the *letters* (plural) and articulated an explanation ultimately finding them to be insufficient support for Job's proposition without a broader context. Ibid. Re-weighing that consideration isn't within the province of review here. As stated by the Fifth Circuit, the USCIS doesn't have to "write an exegesis on every contention. What is required is merely that it consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Efe v Ashcroft*, 293 F3d at 899, 908 (5th Cir 2002).

*As to whether USCIS imposed an ultra vires criterion,* Job contends that the analysis by USCIS "created a flawed foundation for assessing evidence in the final merits determination and led to an improper dismissal of Mr. Job's appeal." Dkt 26 at 14. Specifically, he claims that no law requires him to establish "how common or uncommon it is for high-ranking engineers in the Petitioner's field to serve this way." Ibid, citing Dkt 25 at 5. To the contrary, no *ultra vires* standard appears. The function of the final merits review is to determine whether Job "sustained national or international acclaim" and that his "achievements have been recognized in the field of expertise." 8 CFR §204.5(h)(3). USCIS concluded in that respect that mere service on a review board, without more,

6

cannot evince *extraordinary* ability. Dkt 25 at 7. It also determined that the appointment of Job to committees by Shell leadership didn't inherently demonstrate that he had acclaim *outside* his company. Ibid.

Such denial cited the record and considered Job's claims. And as aptly stated by Defendants, "That the AAO required Plaintiff to provide context for his asserted achievements is not *ultra vires*, but instead, an inherent part of any 'extraordinary ability' determination." Dkt 28 at 20. Quite clearly, then, the consideration went specifically to the concepts of national or international acclaim and recognition of achievements in the field. Such a decision cannot be said to somehow impose an *ultra vires* criterion.

*As to whether Job will substantially benefit the United States*, Job argues that USCIS "never assessed" whether Job "would substantially benefit prospectively the United States." Dkt 26 at 15. But the decision by USCIS notes that it didn't need to consider the "separate question of whether his entry would substantially benefit prospectively the United States"—for the very reason that Job didn't show that he had sustained national or international acclaim. Dkt 25 at 7. That conclusion isn't problematic. Generally, "agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach." *Immigration & Naturalization Service v Bagamasbad,* 429 US 24, 25 (1976), *per curiam*; see also Dkt 25 at 7 n3. Simply put, nothing supports contention that an agency must make findings unnecessary to the ultimate conclusion.

*As to whether USCIS applied an erroneous adjudication process,* Job argues that the two-step standard undertaken by USCIS is "problematic." Dkt 1 at 6. To the contrary, the analytical framework applied by USCIS matches that applied by the Fifth Circuit in *Amin*, 24 F4th at 388. For his part, Job cites only a single case from the Eastern District of Michigan, *Buletini v Immigration & Naturalization Service*, 860 F Supp 1222 (ED Mich 1994). He argues that it stands for the

proposition that "the petitioner should be deemed qualified, and the burden then shifts onto the Service to reject the evidence that meet the criteria, if suppose, it finds that the evidence was fraudulent or too dated and stale." Dkt 1 at 14. But the Fifth Circuit rejected this exact argument in *Amin*, finding such burden-shifting framework to be "unmoored" from the INA. 24 F4th at 391 n5, 392. This leaves Job's contention that USCIS applied an erroneous process incorrect under binding precedent.

4. Conclusion

The issue presented in the competing motions for summary judgment is whether affirmance by the Administrative Appeals Office of USCIS of the denial by the Texas Service Center of Plaintiff Stuart Job's I-140 Immigrant Visa Petition was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See 5 USC §706(2)(A). It wasn't.

As such, the motion for summary judgment by Defendants Ur M. Jaddou, Alejandro Mayorkas, The US Department of Homeland Security, US Citizenship and Immigration Services (USCIS), Susan Dibbins, John Allen, and Officer XM2084 is GRANTED. Dkt 28.

The motion for summary judgment by Plaintiff Stuart Job is DENIED. Dkt 26.

The complaint is DISMISSED WITH PREJUDICE.

This is a FINAL JUDGMENT.

SO ORDERED.

Signed on June 12, 2024, at Houston, Texas.

*[signature: Chas R Eshridge II]*

Hon. Charles Eskridge
United States District Judge